[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Appellant, Robert Williams, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling objections to the magistrate's decision and adopting the magistrate's decision, which granted permanent custody of appellant's minor son, Cody, to Franklin County Children Services ("FCCS") for purposes of adoption.[1]
{¶ 2} On August 4, 1998, FCCS filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging that Cody, born June 11, 1993, was an abused/neglected/dependent child. In particular, the complaint stated that Cody and his family, which included his parents and two older half-sisters (who are not the subject of this action), first came to the attention of FCCS in 1996. Appellant and Cody's mother, Monica Williams, submitted to voluntary supervision by FCCS in June 1998. On July 23, 1998, the family began living at a motel due to the absence of water in the family home. That same day, appellant and Monica signed a safety plan, in which they agreed to abstain from the use of alcohol. On July 31, 1998, Cody was left at the motel alone all night while appellant and Monica went to a bar. At 6 a.m. on August 1, 1998, Monica returned to the motel drunk, with both wrists slit and bleeding. Sometime later, after one of the older siblings had washed and bandaged Monica's wrists, appellant arrived and, during an argument, kicked Monica in the ribs. Thereafter, appellant and Monica continued to drink throughout the day. At some point, Monica threw a radio at appellant, who then retaliated by punching Monica in the face. Ultimately, one of the older siblings called the police and reported the alcohol abuse and domestic violence.
{¶ 3} On August 4, 1998, FCCS requested an emergency care order for Cody's health and safety. On the same day, an emergency care order was entered granting FCCS temporary custody of Cody, with authority to place him in foster care. The Franklin County Public Defender was appointed as Cody's guardian ad litem. The matter was scheduled for hearing on August 6, 1998. At that hearing, the magistrate concluded that Cody's placement with his parents was not in his best interest.
{¶ 4} Following an October 13, 1998 adjudication hearing on FCCS's complaint, the magistrate issued a decision, filed October 21, 1998, finding Cody to be a dependent minor as defined in R.C. 2151.04(C) and dismissing the abuse and neglect causes of action. Concluding that residence in his parents' home would be contrary to Cody's welfare, the magistrate's decision temporarily committed Cody to the custody of FCCS until further order of the court. The matter was set for annual review on June 22, 1999. By judgment entry filed the same day, the trial court adopted the magistrate's decision.
{¶ 5} A case plan developed by FCCS noted that appellant had been arrested numerous times and had a criminal history of assaultive behaviors, including domestic violence, disorderly conduct, assault and menacing, as well as OMVI and drug charges, and that he was currently on probation. The case plan further noted that Cody had witnessed ongoing domestic violence and excessive drunkenness in the home. The case plan directed that appellant comply with probation requirements already in place, participate in domestic violence and drug and alcohol counseling on a regular basis, attend parenting classes, maintain appropriate housing, and abstain from criminal behavior.
{¶ 6} In the interval between the October 13, 1998 adjudication hearing and the June 22, 1999 annual review, two separate sets of documents reflecting FCCS's semi-annual administrative review ("SAR") were filed with the trial court. The first SAR, dated December 3, 1998, indicated that appellant had made some progress toward compliance with the case plan, but significant blocks to reunification still needed to be resolved. In particular, the report noted that appellant had completed a drug and alcohol assessment and had submitted to a few random urine screens and alcasensor tests. In addition, appellant had attended four domestic violence classes and had begun to take some responsibility for his abusive behaviors.
{¶ 7} The second SAR, dated May 3, 1999, indicated that appellant had made no significant progress on the case plan. Specifically, the SAR noted that appellant had not followed through with drug and alcohol counseling as referred. He had completed only four of fifteen random urine screens and admitted that he had not stopped using alcohol. He continued, however, to deny that he had a drinking problem. Further, he had not completed the domestic violence program and, in fact, had been terminated from the program due to excessive absenteeism. The SAR further indicated that Monica had left the home on January 1, 1999, reporting that she could not cope with appellant's abusive behavior. Indeed, she obtained a civil protection order against appellant after a physical altercation with him.
{¶ 8} Following the June 22, 1999 annual review hearing, the magistrate issued a decision ordering that FCCS maintain temporary custody of Cody. By judgment entry filed July 2, 1999, the trial court adopted the magistrate's decision.
{¶ 9} The SAR completed by FCCS on October 21, 1999, indicated that appellant had made no progress on the case plan. In particular, the SAR noted that appellant continued to drink and exhibit abusive behavior. He was arrested on domestic violence and assault charges and was incarcerated from July 4 to September 15, 1999.
{¶ 10} On October 22, 1999, FCCS filed a motion for permanent custody pursuant to R.C. 2151.413, seeking custody under R.C.2151.414(B)(1)(d). In an affidavit attached to the motion, Renee Lyss, the FCCS caseworker assigned to the Williams family, attested that appellant: (1) failed to regularly attend either drug and alcohol or domestic violence treatment; (2) failed to obtain and maintain adequate housing; and (3) had recently been released from the Franklin County Correction Center after having received one-year probation on an October 8, 1999 charge of domestic violence toward Monica.
{¶ 11} Thereafter, the hearing on FCCS's permanent custody motion was continued numerous times. In the interim, the March 3, 2000 SAR was filed. Once again it indicated no progress in the case plan. Appellant's whereabouts were unknown for the review period. He had not completed a domestic violence program, a substance abuse program, or urine screens.
{¶ 12} On July 31, 2000, the permanent custody motion was heard before the trial court. By judgment entry filed August 9, 2000, the trial court granted the motion for permanent custody. Appellant timely appealed the judgment to this court. Upon review of the record, this court found that in determining Cody's best interests pursuant to R.C. 2151.414(D), the trial court failed to give due consideration to Cody's wishes as required by R.C. 2151.414(D)(2). Accordingly, this court reversed and remanded the case for a new hearing. In re Williams (Mar. 20, 2001), Franklin App. No. 00AP-973.
{¶ 13} In the interval between the trial court's August 9, 2000 judgment and this court's resolution of appellant's appeal, two SARs were filed. The first, dated September 1, 2000, indicated that an appropriate and adoption-ready couple had expressed a desire to adopt Cody and that Cody had indicated that he would like the couple to adopt him. The SAR noted that the adoption could not take place until appellant's pending appeal was resolved. The second, dated February 5, 2001, noted that Cody had developed a strong bond with the prospective adoptive parents.
{¶ 14} After numerous continuances, a re-hearing on the permanent custody motion was held before a magistrate over four days in January 2002. At the hearing, the magistrate interviewed Cody in camera in the presence of the guardian ad litem. The magistrate determined that Cody had sufficient reasoning ability to testify as to his wishes. To that end, Cody stated that he "would like to live with the people I'm living with now." (Tr. Jan. 2, 2002, at 16.) When asked if he would like to see his parents at all, he answered "yeah," but only if they stopped fighting and lying. (Tr. at 17-18.) He also stated that if he were adopted, it would be "okay" if his natural parents no longer had the right to see him. (Tr. at 17.)
{¶ 15} Appellant testified that he had resided in Mount Vernon, Ohio, since December 2000. His income consisted of $670 per month in social security disability benefits, plus an additional $500 per month for performing odd jobs like painting and remodeling. Although he admitted that in April 1999 he was terminated from domestic violence counseling provided by Lutheran Social Services due to excessive absenteeism, he maintained that his absenteeism was due to a conflict with his employment.
{¶ 16} Appellant admitted that he was incarcerated from July 4 to September 15, 1999, and was later convicted on a charge of domestic violence and placed on one-year probation. As part of his probation, appellant was ordered to attend substance abuse counseling at Freedom Center and a domestic abuse/anger management program called Men Exploring New Directions ("MEND"). He testified that he had attended the substance abuse counseling at least once a week for three years and was still attending that program. He further testified that he completed the MEND program in August 2000.
{¶ 17} In December 1999, appellant was convicted of criminal trespass stemming from a bar fight. In January 2000, he was charged with probation violations relating to the civil protection order. He entered guilty pleas to those charges in April 2000. In March 2001, he was convicted of OMVI stemming from an incident in July 2000. On September 2, 2001, he was convicted of disorderly conduct based upon an incident of public urination. He was again convicted of disorderly conduct on September 18, 2001, as the result of a bar fight.
{¶ 18} Appellant testified that he loved Cody very much and would like Cody to live with him again. He stated that he was not currently bonded with Cody because he had not been permitted to see him in the past year pending the appeal of the first permanent custody adjudication and because Cody had been out of his custody for three and one-half years. He further testified that he was no longer using alcohol and planned to remain abstinent. However, he admitted that he had relapsed in September 2001. He further admitted that he had not complied with the case plan with respect to the requirement that no domestic violence occur in the home, that he not abuse alcohol or drugs, and that he not engage in criminal behavior. He further acknowledged that much of his criminal history was related to alcohol abuse.
{¶ 19} Ms. Lyss testified as to appellant's compliance (or noncompliance) with the FCCS case plan. In particular, she noted that appellant never told her that he missed many of the Lutheran Social Services domestic violence classes due to employment conflicts. Citing appellant's extensive criminal history, Ms. Lyss opined that she still harbored concerns about ongoing domestic violence issues even after appellant completed domestic violence treatment.
{¶ 20} According to Ms. Lyss, despite appellant's ongoing attendance in substance abuse counseling, he had yet to successfully complete the treatment required by the case plan. She further testified that based upon personal observation of appellant over the three-and-one-half-year period she had been involved with the family, she remained concerned that alcohol continued to negatively affect his functioning.
{¶ 21} Ms. Lyss further testified that appellant's repeated incarcerations over the past three years made him unavailable to parent Cody on a consistent and stable basis. In particular, Ms. Lyss noted that appellant did not attend scheduled visitation with Cody from October 1999 to April 2000 because he was either trying to avoid an arrest warrant or was incarcerated.
{¶ 22} She further stated that appellant had failed to maintain adequate housing as required by the case plan. In support of this contention, Ms. Lyss cited appellant's on-again, off-again relationship with Monica and his repeated incarcerations.
{¶ 23} Ms. Lyss further testified that Cody had been placed in a foster home with prospective adoptive parents in June 2001 and that he was adjusting to that situation quite well, as the new foster family and the former foster family were related. According to Ms. Lyss, Cody was very closely bonded to his new foster family and had continuing contact with his half-sisters. She also stated that Cody was in need of a legally secure permanent placement, as he had been in foster care for three and one-half years.
{¶ 24} Ms. Lyss attested that appellant had maintained regular visitation with Cody in November and December 2001, but there was minimal interaction between the two during the visitation. She admitted that the minimal interaction could have stemmed from the fact that visitation had been interrupted for more than a year during the pendency of appellant's appeal of the first permanent custody adjudication. She averred that appellant acted affectionately toward Cody during visitation.
{¶ 25} Gloria Sprague testified as an expert in the field of child and family mental health counseling. Ms. Sprague averred that she held ten counseling sessions with Cody beginning in August 2001 for the purpose of determining how Cody was doing in his placement with his foster family, whether that family would be an appropriate adoption family for him, and whether it would be appropriate for Cody to resume visitation with appellant. Based upon these counseling sessions, Ms. Sprague determined that Cody was adjusting well to his foster family, that the family environment was a very stable one, and that there was not a strong attachment between Cody and appellant. She opined that Cody needed to achieve stability in his home life as soon as possible.
{¶ 26} Following the January 2002 hearing, the magistrate issued a decision, filed February 28, 2002, including findings of fact and conclusions of law. Therein, the magistrate concluded that Cody could not and should not be placed with appellant within a reasonable time, as appellant had repeatedly failed to remedy the conditions giving rise to placement, despite the reasonable and diligent case-planning efforts of FCCS. Further, the magistrate found that the dearth of relatives to assume custody of Cody, Cody's lack of attachment to appellant, the strong bond with and good care provided by Cody's foster family, the length of time Cody had been in placement, as well as Cody's wishes, provided clear and convincing evidence that Cody was in need of a legally secure placement which could be achieved only with a grant of permanent custody to FCCS. Finally, the magistrate found, by clear and convincing evidence, that it was in Cody's best interest to terminate appellant's parental rights.
{¶ 27} On March 15, 2002, appellant filed an objection to the magistrate's decision, arguing that FCCS had failed to show by clear and convincing evidence that it was in Cody's best interest to award permanent custody to FCCS and that Cody could not or should not be placed with appellant within a reasonable time. A hearing on the objection was held on July 10, 2002. By decision and entry filed July 23, 2002, the trial court determined that clear and convincing evidence supported a finding that the grant of permanent custody to FCCS was in Cody's best interests.
{¶ 28} By way of background, the court noted that Cody was initially removed from parental custody in 1998 due to problems stemming from domestic violence and alcohol abuse by the parents. The court further mentioned that although appellant had completed parenting classes in 2000, he had shown little improvement in his parenting skills. The court further observed that although appellant had engaged in substance abuse counseling beginning in September 1999 and continued to participate in counseling on occasion, he admitted that he has had several relapses during that period. The court also stated that appellant had demonstrated affection toward Cody, but had acknowledged that there was no significant bonding between Cody and him. In addition, the court stated that appellant had been incarcerated numerous times since Cody's custody issue was first brought before the court.
{¶ 29} In its analysis concerning the "best interest" issue, the court stated that the magistrate had conducted an in camera interview with Cody in the presence of the guardian ad litem. At the time of the interview, Cody was eight years old and in the second grade. The trial court noted that the magistrate had determined that Cody had sufficient reasoning ability to be able to speak concerning his wishes. The trial court further noted that Cody stated during the interview that he would like to live with the people with whom he was living. Further, when informed that one of the court's options was to allow him to be adopted, which meant that his natural parents would not have any right to see him, he replied that that would be "okay"; however, he further stated that he would not object to seeing his natural parents as long as they stopped fighting and lying.
{¶ 30} Regarding appellant's willingness or capacity to properly raise Cody, the court noted that appellant testified that he did not believe he had bonded with Cody because he had not seen him for over a year. The court found that appellant's repeated incarcerations since the opening of the custody matter greatly affected his ability to parent Cody.
{¶ 31} From this decision and entry, appellant timely appeals, setting forth two assignments of error, as follows:
{¶ 32} "[1.] The trial court erred in granting the motion for permanent custody as the decision was against the manifest weight of the evidence and contrary to law.
{¶ 33} "[2.] The trial court failed to enter a finding that one of the factors set forth in R.C. 2151.414(E) had been established by clear and convincing evidence."
{¶ 34} By his assignments of error, appellant contends, in essence, that the weight of the evidence does not support the trial court's decision to overrule his objections to the magistrate's decision and award FCCS permanent custody of the children. In particular, appellant asserts that the evidence submitted by FCCS was insufficient to establish either that Cody could not or should not be returned to appellant within a reasonable period of time or that terminating appellant's parental rights was in Cody's best interests. Appellant also asserts that the trial court failed to make a finding, supported by one of the factors set forth in R.C. 2151.414(E), that Cody could not or should not be placed with appellant within a reasonable time.
{¶ 35} Appellee contends that competent, credible evidence supports the trial court's decision to award FCCS permanent custody of Cody. Appellee notes that because Cody had been in FCCS custody for at least 12 of the 22 months preceding the filing of the motion for permanent custody and/or the hearing on the motion for permanent custody, appellant's contention that the trial court was required to find that Cody could not or should not be placed with appellant within a reasonable time is without merit. Appellee states that pursuant to R.C. 2151.414(B)(1)(d), the trial court did not need to consider whether Cody could not or should not be placed with appellant within a reasonable time.
{¶ 36} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Adoption of Lay (1986), 25 Ohio St.3d 41, 42. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. State v. Scheibel (1990),55 Ohio St.3d 71, 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
{¶ 37} Pursuant to R.C. 2151.413, a public children services agency that has temporary custody of a child is permitted to file a motion for permanent custody of the child. In considering such a motion, the trial court must follow the guidelines set forth in R.C. 2151.414.
{¶ 38} R.C. 2151.414(A)(1) requires the trial court to conduct a hearing on the motion for permanent custody in order to determine if it is in the best interests of the child to permanently terminate parental rights and grant permanent custody to the agency. The decision that the child is a dependent child may not be re-adjudicated at the hearing. See R.C. 2151.414(A)(1). Once a child has been adjudicated dependent under R.C. 2151.04, the child's best interests become the trial court's paramount concern when determining whether permanent custody is justified. In re Decker (Feb. 13, 2001), Athens App. No. 00CA039, citing In re Cunningham (1979), 59 Ohio St.2d 100, 106.
{¶ 39} Pursuant to R.C. 2151.414(B), a trial court may grant permanent custody of a child to a public children services agency if the court determines, by clear and convincing evidence, that the child's best interests would be served by the award of permanent custody and that one of the following applies:
{¶ 40} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 41} "(b) The child is abandoned.
{¶ 42} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
{¶ 43} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."[2]
{¶ 44} Clear and convincing evidence has been defined by the Ohio Supreme Court as:
{¶ 45} "* * *[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In Re Estate of Haynes (1986), 25 Ohio St.3d 101, 104.
{¶ 46} Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See In re Decker, supra; In re Fox (Sept. 27, 2000), Wayne App. No. 00CA0038 (abrogated on other grounds in In re Hoffman [2002], 97 Ohio St.3d 92); In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 62; In re Moody (Aug. 7, 2000), Athens App. No. 99 CA 63; In re Strong, Franklin App. No. 01AP-1418, 2002-Ohio-2247, at ¶ 44; In re Lusk (Nov. 27, 2000), Butler App. No. CA2000-07-139; In re Barker (June 16, 2000), Champaign App. No. 20001; and In re Jasmine D. (June 8, 2001), Erie App. No. E-01-007.
{¶ 47} Accordingly, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time.
{¶ 48} Pursuant to R.C. 2151.414(D), the trial court must consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. Those factors are: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (12) of R.C. 2151.414 apply in relations to the parents and child.
{¶ 49} R.C. 2151.414(E)(7) to (12) provide as follows:
{¶ 50} "(7) The parent has been convicted of or pleaded guilty to one of the following:
{¶ 51} "(a) An offense under section 2903.01, 2903.02, or 2903.03
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
{¶ 52} "(b) An offense under section 2903.11, 2903.12, or 2903.13
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ 53} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
{¶ 54} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ 55} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
{¶ 56} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
{¶ 57} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
{¶ 58} "(10) The parent has abandoned the child.
{¶ 59} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
{¶ 60} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."
{¶ 61} In the instant case, we find ample competent, credible evidence to support the trial court's decision to award FCCS permanent custody of Cody. Cody was initially removed from the home on August 4, 1998, and was adjudicated dependent on October 21, 1998. For purposes of R.C. 2151.414(B)(1)(d) and (D), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [dependent] * * * or the date that is sixty days after the removal of the child from the home." R.C. 2151.414(B)(1). FCCS moved for permanent custody on October 22, 1999. By the time the permanent custody motion was heard in January 2002, Cody had been in the temporary custody of FCCS for almost three and one-half years. Thus, for purposes of R.C.2151.414(B)(1)(d), Cody had been in the temporary custody of FCCS for at least 12 months of a consecutive 22-month period ending on or after March 18, 1999.
{¶ 62} Further, upon review of the record, we find that substantial competent and credible evidence exists to support the trial court's decision that Cody's best interests would be served by awarding permanent custody to FCCS.
{¶ 63} With regard to the first factor under R.C. 2151.414(D), the child's interaction and interrelationship with his parents, siblings, and foster care providers, the evidence demonstrates that Cody stated that he would like to see his parents only if they stopped fighting and lying and that he would be "okay" with never seeing appellant again if he were adopted. The evidence further establishes that although appellant expressed love for Cody, he admitted that he was not bonded with Cody because he had not been permitted visitation with him for a year pending the outcome of his appeal of the first permanent custody adjudication and because Cody had been out of his custody for a period of almost three and one-half years. Moreover, Ms. Sprague testified that there was not a strong attachment between Cody and appellant. The evidence further illustrates that Cody has lived in a foster home with prospective adoptive parents since June 2001, and has formed a close bond with them. In addition, living with his foster family provided the opportunity for a stable family environment and contact with his two half-sisters.
{¶ 64} The record also demonstrates the following with regard to the second factor, the child's wishes as expressed directly by the child or the guardian ad litem. At the time of the hearing before the magistrate, Cody was eight years old, and, as noted by the magistrate, of sufficient reasoning ability to express his wishes directly. At that hearing, Cody stated that he would like to live with his foster family and that if he were adopted, it would be "okay" if appellant did not have the right to see him any more.
{¶ 65} As to the third factor, the custodial history of the child, including whether the child had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, we note that at the time of the permanent custody hearing, Cody had been in FCCS's temporary custody for almost three and one-half years.
{¶ 66} With regard to the fourth factor, Cody's need for a legally secure placement, both Ms. Lyss and Ms. Sprague testified that Cody needed to achieve stability in his home life as soon as possible and that such stability could be afforded by Cody's foster family. Further, the evidence demonstrates that appellant was either unable or unwilling to provide a stable and nurturing environment for Cody. In particular, as the trial court noted, although appellant completed parenting classes as required by the case plan, he has shown little improvement in his parenting skills. In addition, although he engaged in substance abuse counseling beginning in September 1999 and continues to participate on an on-going basis, he reported several relapses during that period, including the latest in September 2001. In addition, appellant was incarcerated numerous times since the opening of the custody matter. His repeated incarcerations made him unavailable to parent Cody on a consistent and stable basis.
{¶ 67} In light of the foregoing, we conclude that the trial court properly determined that Cody's best interests would be served by awarding FCCS permanent custody. We reiterate that because R.C. 2151.414(B)(1)(d) permits a trial court to award a children services agency permanent custody upon finding that the child has been in temporary custody for at least 12 of the prior 22 months and that permanent custody would serve the child's best interests, a trial court need not render any finding relating to whether the child cannot or should not be placed with either parent. Therefore, appellant's arguments relating to whether the trial court complied with R.C. 2151.414(E) and whether the evidence does or does not support a finding that Cody could or should be placed with him are of limited value with respect to the trial court's decision to award permanent custody to FCCS. As noted in In re Decker, supra, "[p]ursuant to R.C. 2151.414(B)(1)(d), the parent's conduct is irrelevant. The child's best interests control."
{¶ 68} Although we find no merit to either of appellant's assignments of error, we note that the decision and entry appealed from is fatally flawed, in that it contains language suggesting that the court granted permanent custody to FCCS under both R.C. 2151.414(B)(1)(a) and2151.414(B)(1)(d). In particular, the court stated: "In order to terminate parental rights and award permanent custody to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent." (Decision and Entry, page 3; emphasis added.) Such language suggests that the court contemplated R.C. 2151.414(B)(1)(a) in making its permanent custody decision. The court also noted, however, that "Cody was initially removed from parental custody in 1998," suggesting that the court contemplated R.C. 2151.414(B)(1)(d) in deciding the custody issue. (Decision and Entry, page 2; emphasis added.) As we have previously noted, when a trial court awards a children services agency permanent custody upon a finding under R.C. 2151.414(B)(1)(d) that the child has been in temporary custody for at least 12 of the prior 22 months and that permanent custody would serve the child's best interests, the court need not render any finding relating to whether the child cannot or should not be placed with either parent. In the instant case, the evidence clearly supports a finding under R.C. 2151.414(B)(1)(d). Thus, no finding under R.C. 2151.414(B)(1)(a) was necessary. We remand the matter for clarification of those factors or criteria upon which the trial court based its order granting permanent custody.
{¶ 69} Accordingly, based upon the foregoing, this court hereby overrules appellant's assignments of error and affirms the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, but remands for clarification of the decision and entry.
Judgment affirmed; cause remanded with instructions.
LAZARUS and BROWN, JJ., concur.
[1] The trial court's order also terminated the parental rights of Cody's mother, Monica Williams. Ms. Williams is not a party to this appeal.
[2] R.C. 2151.414(B) as amended by H.B. No. 484, included the language "the effective date this amendment," rather than the specific date "March 18, 1999." The specified effective date was added by No. H.B. 176, effective October 29, 1999.